**Rudy H. GARZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38722.**

Court of Criminal Appeals of Texas.

Dec. 8, 1965.

Rehearing Denied Jan. 26, 1966.

---

Clyde W. Woody, Houston (On appeal only), Fred H. Dailey, Jr., Houston (On appeal only), John P. Farra, Houston (On appeal only), for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and James I. Smith, Jr., Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is robbery by assault; the punishment, 30 years confinement in the state penitentiary.

The evidence reveals that shortly before noon on July 22, 1960, two men entered the Salazar Grocery Store in Houston, Texas, wearing stockings over their faces and carrying pistols. After both men had ordered Mrs. Salazar, the owner of the store, to put her hands up, the smaller of the two directed his companion, later identified as appellant, to go to the cash register. When Mrs. Salazar began screaming, the smaller man struck her and pushed her to the floor. There he sat on her, holding her hands, and continued to strike her upon her head with his fists and the pistol, while appellant removed about $50 from the cash register. Both men then fled from the store to an old-model black Chevrolet, where a companion waited at the wheel, and sped away.

Mrs. Salazar was taken to the emergency room of Parkview Hospital to be treated for the injuries she had sustained, and it was at the hospital that she first informed investigating officers that appellant participated in the robbery.

Appellant was taken into custody at about 10:30 p. m. on July 23, 1960, the day after the robbery occurred, and was taken to the police station. At about 11 p. m. appellant was placed in a "show-up" and was positively identified by Mrs. Salazar. The record shows that Mrs. Salazar had known appellant most of his life. He was five feet six inches tall and weighed about 250 pounds, and was known as "Blimp." He lived in the neighborhood near the grocery all his life, had cashed checks there, borrowed money from Mrs. Salazar, and passed by the store frequently.

After this "show-up", appellant was taken to the robbery division of the police department where he was questioned by officers until about 2:00 a. m. on July 24. By that time, appellant had supplied the officers with the names of his two confederates and, not knowing their addresses, agreed to guide the police to their homes. From a police car, appellant pointed out where each of his companions lived, and they were picked up by other officers in other automobiles. Appellant was returned to the police station by 4 a. m., and talked to his attorney at that time. At about 5:30 a. m., appellant agreed to make a statement, and did so after receiving the proper warning. In the statement, signed at 6:15 a. m. on July 24, appellant admitted that he had participated in the robbery, and that he was the one who had taken the money from the cash register.

The evidence amply supports the jury's verdict. There are no formal bills of exception, but appellant urges reversal of his conviction by several informal bills. He contends that error was committed when the trial court allowed part of appellant's confession to be introduced into evi-

dence by the state, because he contends the statement was given involuntarily. At the time the confession was sought to be introduced, a hearing was held out of the presence of the jury, and after hearing evidence as to the voluntariness of the confession and the circumstances under which that statement was made, the trial judge overruled appellant's objection to the admissibility of the statement. In the court's charge, the members of the jury were instructed that if they had a reasonable doubt as to whether or not the statement was given voluntarily, they would not consider the statement for any purpose. We find no merit to appellant's contention.

■ Appellant further argues in his brief filed with this court that the confession was inadmissible because it was the fruit of an illegal arrest and detention. We need not pass upon the legality of appellant's arrest. It is the illegal detention and not an illegal arrest which, under certain circumstances, will vitiate a confession. Benitez v. State, Tex.Cr.App., 377 S.W.2d 651, and cases cited therein. When appellant was taken into custody, he was taken directly to the "show-up" where he was identified as one of the perpetrators of the crime. His detention, under the circumstances shown, was not such as to vitiate the confession.

■ Regardless of the circumstances under which the confession was obtained, however, the record reveals that it was introduced into evidence, in its entirety, by appellant as Defense Exhibit No. 2 while appellant was testifying in his own behalf. Appellant is in no position to complain of evidence he himself developed. Campbell v. State, Tex.Cr.App., 373 S.W. 2d 749; Turner v. State, Tex.Cr.App., 371 S.W.2d 891; Ervin v. State, Tex.Cr.App., 367 S.W.2d 680.

We are mindful of the fact that when improper evidence has been introduced by the prosecution, it is not always cured by an accused offering similar evidence to counter-act the improper evidence. Autry

v. State, 159 Tex.Cr.R. 419, 264 S.W.2d 735; McDuff v. State, 103 Tex.Cr.R. 668, 281 S.W. 1073. But appellant cannot introduce the same statement he claims to be inadmissible, use exculpatory parts of that statement as an affirmative element of his trial strategy, then when that evidence fails to convince the jury of appellant's innocence, re-assert his claim that the evidence should not have been admitted in the first place. See Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L. Ed.2d 408.

■ Appellant further complains of the action of the trial court in restricting appellant's direct examination of two witnesses for the defense. Objections were sustained when each of these witnesses was asked questions tending to show that co-indictee Robert Saldana could not have been at the scene of the robbery at the time that offense was committed. Appellant contends that testimony proving an alibi for appellant's co-indictee is admissible for two purposes, one being to bolster appellant's defensive theory of alibi, and the other being to impeach the testimony of the complaining witness Salazar by showing that she was wrong in her identification of Saldana, and thereby increasing the possibility that she might also be mistaken in her accusation of appellant. A careful search of the record reveals that Mrs. Salazar did not identify Robert Saldana as one of her assailants, but merely stated that he was approximately the same build and size as the shorter of the two men who committed the robbery. On the other hand, she positively identified appellant as one of the perpetrators of this crime. Proof of an alibi for Saldana would not impeach the credibility of Mrs. Salazar's testimony, for she did not say he was one of the men who robbed her. Further, proof that Saldana was some place other than the scene of the offense when it was committed would not bolster appellant's alibi defense because appellant did not contend that he was with Saldana but claimed that he was

at work when the offense was committed. As the testimony was immaterial to any issue in the trial, the trial court committed no error in excluding this evidence.

We find no error in appellant's informal bills of exception, and the judgment is therefore affirmed.