FILED IN
COURT OF CRIMINAL APPEALS

February 18, 2015

ABEL ACOSTA, CLERK

PD-1427-13
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/18/2015 11:21:46 AM
Accepted 2/18/2015 3:43:21 PM
ABEL ACOSTA
CLERK

No. PD-1427-13

## IN THE COURT OF CRIMINAL APPEALS
## AT AUSTIN, TEXAS

**VANESSA CAMERON,** Appellant

**v.**

**THE STATE OF TEXAS,** Appellee

[ON REHEARING]

## APPELLANT'S/RESPONDENT'S FIRST AMENDED BRIEF ON REHEARING AND RESPONSE TO STATE'S MOTION FOR REHEARING ON PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

VANESSA CAMERON, Appellant/Respondent in the above-entitled and numbered cause, by and through her undersigned counsel, files her First Amended Brief on Rehearing and Response to State's Motion for Rehearing on Petition for Discretionary Review:

## PROCEDURAL HISTORY

On October 8, 2014 this Court affirmed the Fourth Court of Appeal's opinion in *Cameron v. State,* ___ S.W.3d ___, 2014 WL 4996290 (Tex. App.—San Antonio 2013). The 6-3 decision holds, in essence, that the record below "sufficiently shows that the *voir dire* proceedings were closed" and that same was

1

not Constitutionally justified under the Sixth Amendment. On November 7, 2014, the State filed a Motion for Rehearing, complaining that the Court's majority opinion "will be nearly impossible for trial judges to implement" and "places no burden of proof on the defense" to demonstrate that the trial court was not open to the public during *voir dire*. On January 28, 2015, this Court granted the State's Motion for Rehearing. This Brief on Rehearing is filed on behalf of Appellant/Respondent, Vanessa Cameron pursuant to Rule 70.4 of the Texas Rules of Appellate Procedure.

## MISCHARACTERIZATION OF THE RECORD

The State's Motion for Rehearing is fraught with misstatements of fact and mischaracterizations of the record. For example, the State misrepresents that:

> "*[T]he trial judge said* in essence, Defense, *the courtroom is open, bring in anyone you want and we'll accommodate them.*" (emphasis supplied)

State's Motion, at p.2. Nothing could be further from the truth. In actual fact, what the trial judge repeatedly reiterated, on some ten separate occasions is that, "I notice for the record that *every single chair* that we have available...ha[s] been removed and placed in the jury area because that is the only way we can accommodate the number of jurors in this courtroom," [RR Vol. 2 at 5, ln. 10], "*I don't see any room whatsoever where anybody else would be able to sit and*

2

*observe.*" [RR Vol. 2 at 5, ln. 19] "Certainly people have the opportunity to observe. We *just don't know where to put them*, Mr. Esparza," [RR Vol. 2 at 6, ln. 3], "I'm not ruling. I'm just telling you, *where can we put them? Where are we going to put them?*" [RR Vol. 2 at 6, ln. 8], "I've never ruled that the public is excluded. *All I'm saying is, where do you suggest we put them?* [RR Vol. 2 at 6, ln. 22], "The courtroom's going to be absolutely stuffed with venirepanel members. I don't know what we're going to do." [RR Vol. 2 at 8, ln. 7], "*I'm looking around this court and I'm telling you, I don't see where we could put them.*" [RR Vol. 2 at 9, ln. 13], "*Every single chair* that is made available for anybody is currently put within the jury venirepanel area to accommodate every single member of the venirepanel . . . *I don't see any available chairs as I'm looking around the courtroom where anybody could sit.* I just don't know how we could accommodate," [RR Vol. 2 at 9, ln. 17], "*I just don't know where to put them,*" [RR Vol. 2 at 10, ln. 16], "*Tell me where to put them* and we'll put members of her family," [RR Vol. 2 at 10, ln. 21] (emphasis added). These repeated record statements by the trial judge can hardly be characterized as a declaration that "the courtroom is open, bring in anyone you want and we'll try to accommodate them." *See* State's Motion for Rehearing, at p. 2.

As if repeating a falsehood will make it true, the State repeats this misstatement in question form:

3

"If the defense objects that that the courtroom is closed to the public, and the court responds, 'No it isn't. Bring in anyone you want. . . .'"

State's Motion for Rehearing, at p. 6.

Here, the trial court never suggests that there is any room for the defendant's family or the public. In fact, the judge made it abundantly clear on the record that there was no room in his courtroom for anyone, other than the prospective jurors, and placing quotations around such a misrepresentation does not make it true.[1]

This Court's majority correctly found that "the judge's own statements show that there was no room in the court for spectators; he all but conceded that no one was allowed to witness the *voir dire*. The record sufficiently shows that the *voir dire* proceedings were closed." *See Cameron v. State,* 2014 WL 4996290, at * 5 (Tex. Crim. App. 2014).[2]

---

[1] Interestingly, this is the same concern that "There were only as many seats available as prospective jurors on the panel"] expressed by the trial court, and rejected by this Honorable Court in *Steadman v. State*, 360 S.W.2d 499, 506 (Tex. Crim. App. 2012).

[2] Based upon the above, the Majority correctly found that "While it is true that the trial court repeatedly stated that the courtroom was not closed, there was no dispute of the fact that all spectators had been removed...Indeed, far from disputing these facts, the trial judge sought to justify them. Were the *voir dire* proceedings actually open to the public, the trial judge would not have needed to cite space limitations and safety concerns as reasons to keep the public out. The trial court stated that he could not "accommodate" the appellant's friends and family and that "every single chair" was being used by the venire panel. Halfway through the State's *voir dire* examination, the trial court went on the record and described the cramped conditions of the courtroom at length. He then made findings in accordance with the Supreme Court's *Waller* opinion. These findings track the test for whether or not a closure was justified. Again, were the *voir dire* proceedings actually open, there would be no need for a *Waller* analysis." *Cameron v. State,* 2014 WL 4996290, at * 4.

4

## SHIFTING THE BURDEN OF PROOF

As for the State's complaint that "the majority opinion places no *burden of proof on the defense*", it is clear here that the trial judge's repeated demand that defense counsel tell him *"where can we put them? Where are we going to put them?"* [RR Vol. 2 at 6, ln. 8], *"where do you suggest we put them?* [RR Vol. 2 at 6, ln. 22], *"Tell me where to put them* and we'll put members of her family," [RR Vol. 2 at 10, ln. 21] (emphasis supplied), had the effect of shifting the burden to the defense to suggest how to accommodate the public during these proceedings.

Both this Honorable Court and the United States Supreme Court have made clear that the burden is not on the defense to show that any member of the public was excluded, rather, the reviewing court, "must look at the totality of evidence and determine *whether the trial court fulfilled it's obligation* to take every reasonable measure to accommodate public attendance at criminal trials." *Lilly v. State,* 365 S.W.2d 321, 331 (Tex. Crim. App. 2012) (quoting *Presley v. Georgia,* 558 U.S. 209, 215 (2010) (emphasis supplied)).

> *"When determining whether a defendant has proved that his trial was closed to the public, the focus is not on whether the defendant can show that someone was actually excluded.* Rather, *a reviewing court must* look to the totality of the evidence and *determine whether the trial court fulfilled its obligation 'to take every reasonable measure to accommodate public attendance* at criminal trials.'*

*Presley,* 130 S.Ct. at 725." *Lilly v. State,* 365 S.W.2d 321, 331 (Tex. Crim. App. 2012) (emphasis supplied).[3]

Moreover, "there is *no burden on the defendant* to proffer alternatives," it is the trial court that is "obligated to take every reasonable measure to accommodate public attendance at criminal trials." (emphasis added) *Steadman v. State,* 360 S.W.2d 499, 505 (Tex. Crim. App. 2012), citing *Presley v. Georgia,* 558 U.S. 209, 215 (2010).[4]


## NO OBJECTION MAY BE NECESSARY

The State argues that trial counsel failed to obtain a ruling on his objection to the fact that the public was unable to attend jury selection. However, the United States Supreme Court suggested in *Presley* that the defendant may not even need to object to exclusion of the public from jury selection in a criminal prosecution, in order to preserve the issue for review. *See: Presley v. Georgia,* 558 U.S. 209, 214 (2010).

> "The conclusion that trial courts are required to consider alternatives
> to closure even when they are not offered by the parties is clear not
> only from this Court's precedents but also from the premise that '[t]he

---

[3] The U.S. Supreme Court in *Presley* reversed the Georgia Supreme Court's decision that a defendant "was obligated to present the court with any alternatives that he wished the court to consider." 558 U.S., at p. 211.

[4] As the Majority noted, the trial court failed to consider or implement reasonable alternatives such as "move to a bigger courtroom", "split the panel in half," identify a specific danger likely to occur, or ask Appellant's police officer mother "to relinquish her firearm." Cameron v. State, 2014 WL 4996290, at *5.

6

process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system...*The public has a right to be present whether or not any party has asserted the right.* In *Press-Enterprise I*, for instance, *neither the defendant nor the prosecution requested an open courtroom during juror voir dire proceedings.* In fact, both specifically argued in favor of keeping the transcript of the proceedings confidential." (emphasis supplied)

*Presley v. Georgia,* 558 U.S. 209, 214 (2010).[5] In short, it is the trial court, not the defendant, who has the affirmative obligation to take every reasonable measure to accommodate public attendance at criminal trials, including jury selection.

In any event, here defense counsel repeatedly objected and took every reasonable measure to preserve that objection. From the outset, Defense Counsel made clear his objection:

> "I notice prior to the Court calling the case for trial, the bailiff ushered out...the general public, to include family and friends of my client. I would ask that family and friends be allowed to be present here in the courtroom and...if they're excluded, *I would just put for the record an objection to the 6th Amendment of the U.S. Constitution and Article 1, Section 10 of the Texas Constitution* since she does have a right to the public trial." (emphasis supplied) RR Vol. 2 at pp. 4, l. 21 – 5, l. 6.

When the Trial Court stated "I'm not ruling. I'm just telling you, where can we put them?" defense counsel continued to *"request a ruling* from the Court," reiterating that he was objecting "that *the public has been excluded"* from the *voir dire* proceedings. [RR Vol. 2 at 6, ln. 17-20]. Thereafter, counsel repeatedly

---

[5] *See also: Johnson v. U.S.,* 520 U.S. 461, 468-9 (1997), holding the denial of a public trial is "structural error."

requested a ruling on that objection, [*See* RR Vol. 2 at 6, ln. 6-7 (asking "is the Court overruling *my objection?*"); RR Vol. 2 at 6, ln. 14-15 (repeating: "*I still request a ruling from the Court.*") (emphasis supplied); RR Vol. 2 at 7, ln. 12-13; RR Vol. 2 at 8, ln. 10 -11; and again at RR Vol. 2 at 10, ln. 9-10].

The Trial Court acknowledged same, even repeating Defense Counsel's objection, almost verbatim:

> "THE COURT: Your *objection is that people have been excluded from the Court.*
> MR. ESPARZA: Yes, sir.
> THE COURT: The Court has never ruled that way, so I'm not sure what it is that you're objecting to.
> MR. ESPARZA: *The absence of the public from jury selection.*"

[RR Vol. 2 at 8, ln. 12-18] (emphasis added).

After recognizing that Defense Counsel was attempting to make a record of his objection "that the bailiff excluded all the public from this courtroom for jury selection," [RR Vol. 2 at 9, ln. 1], and seeking a ruling on his "constitutional objection," [RR Vol. 2 at 10, ln. 1-3],[6] the trial court reiterated that:

> "TRIAL COURT:...I don't see any available chairs as I'm looking around the courtroom where anybody could sit. I just don't know how we could accommodate....I just don't know where to put them...Tell me where to put them and we'll put members of her family."

[RR Vol. 2 at 9, ln. 23 – 10, ln. 22].

---

[6] Defense Counsel had previously recognized "But there's no ruling from the Court on my objection." [RR Vol. 2 at 8, ln. 10].

The purpose of a timely objection is to inform the trial judge and opposing counsel of the basis of one's complaint in order to afford the trial judge an opportunity to rule on same and correct the complained of defect. *See Maynard v. State,* 685 S.W.2d 60, 65 (Tex. Crim. App. 1985); *Saldano v. State,* 70 S.W. 3d 873, 887 (Tex. Crim. App. 2002); *Zillender v. State,* 557 S.W.2d 515, 517 (Tex. Crim. App. 1977); *See also* TEX. R. APP. PROC. Rule 33.1(a)(1)(A).

The trial court understood what Defense Counsel was objecting to, and asked Defense Counsel to solve that problem for him. [RR Vol. 2 at 6, ln. 21-24]. As this Court's majority correctly recognized:

> "As we view it, the record shows very clearly that the appellant's trial counsel brought the issue of the closed courtroom to the attention of the trial court . . . Counsel then requested (at least six separate times) that the court rule on his objection, but the court declined to rule. Texas Rule of Appellate Procedure 33.1 clearly states that, in order to preserve error, the record must show that the trial court either 'ruled on the request, objection, or motion either expressly or implicitly *or refused to rule on the request, objection, or motion,* and the complaining party objected to the refusal.' This happened below."

*Cameron,* 2014 WL 4996290, at * 4 (emphasis in original).

Whether we describe the trial court's response to defense counsel's repeated objections and some six separate requests for a ruling, as an *implicit* ruling or a refusal to rule, it is clear from this record that the trial court understood perfectly what defense counsel was objecting to and counsel did everything that could be expected to preserve same. Undersigned respectfully suggests that the State's

myopic focus on counsel's statements such as "thank you, Judge" confuses respectful, polite deference to the bench as procedural default or waiver. This Honorable Court should not tolerate such intolerance.

Moreover, contrary to the State's misrepresentations, the trial court did not say that the courtroom was "open," nor did the trial court state that the courtroom was "not closed." As set out above, the trial judge only reiterates repeatedly that he was ***not ordering*** the closure of the courtroom.[7] Whether the judge here ***ordered*** a closure, there can be little doubt that, regardless of any standard of proof, the public was not able to observe a significant portion of the *voir dire* proceedings in this cause.

### PRAYER

Accordingly, this Honorable Court should affirm the Fourth Court of Appeals, dismiss the rehearing as improvidently granted, or, in the alternative, grant re-argument and full briefing for the benefit of those who were not members of this Honorable Court at the original submission of this appeal.

Respectfully submitted

**Gerald H. Goldstein**
State Bar No. 08101000
**Donald H. Flanary, III**
State Bar No. 24045877

---

[7] "It is constitutionally irrelevant whether closure was intentional or inadvertent." *Woods v. State,* 383 S.W.3d 775, 781 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

10

Goldstein, Goldstein, & Hilley
29th Floor Tower Life Building
San Antonio, Texas 78205
210-226-1463
210-226-8367 facsimile

**John T. Hunter**
State Bar No. 24077532
310 S. St. Mary's St.
Suite 1840 – Tower Life Bldg.
San Antonio, Texas 78205
210-399-8669
210-568-4927 facsimile


By:/s/ Gerald H. Goldstein
    GERALD H. GOLDSTEIN
    Attorney for Vanessa Cameron



## CERTIFICATE OF SERVICE

This is to certify that on February 18, 2015, a true and correct copy of the above and foregoing document was served on Jay Brandon, Assistant District Attorney at the Bexar County District Attorney's Office, by electronic mail to jay.brandon@bexar.org.

/s/ Gerald H. Goldstein
Gerald H. Goldstein

11